UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In Re:

NORTHEAST NEUROSURGERY, LLC

Debtor.

**MOTION FOR RELIEF
FROM AUTOMATIC STAY PURSUANT
TO 11 U.S.C. SECTION 362(d) (1)**

Case No. 09-13749  (Chapter 11)

---

Creditor, Whiteman Osterman & Hanna, LLP ("WOH"), by and through its undersigned

attorneys, Ganz Wolkenbreit & Friedman, LLP, hereby moves this Court pursuant to 11 U.S.C. §362

and the Federal Rules of Bankruptcy Procedure for relief from the automatic stay to allow the

continued prosecution of a State Court action for fraudulent conveyance pending in Albany County

Supreme Court, so as to fix and determine Debtor's liability to WOH. WOH does not seek any

collection rights against Debtor absent further proceedings in this Court. In support of its Motion,

WOH states as follows:

### Background

1.      Plaintiff WOH commenced an action for unpaid legal services against Debtor's

predecessor-in-interest, Albany Troy Neurosurgical Associates ("ATNSA"), Debtor, and their

principals, Valmore Pelletier, M.D. and Deborah Hrustich, M.D. in 2005. That litigation continued

through extensive discovery and the Honorable Thomas M. McNamara, Acting Supreme Court

Judge, issued a Decision granting Plaintiff summary judgment on September 23, 2009, a copy of

which is attached as Exhibit 1.

2.      That Decision granted a judgment against ATNSA in the amount of $174,718.63 and

against Debtor in the amount of $43,159.30 (see Judgment attached as Exhibit 2). However, as per

the Decision, the responsibility of Debtor for the amount awarded against ATNSA was determined

not to be suitable for summary judgment determination and, along with responsibility of the individual doctors, was bound over for trial.

3.      While Debtor and the individual doctors have appealed that Decision, there is no stay in place.

4.      Movant desires to file a Note of Issue/Statement of Readiness and to proceed to trial with respect thereto and seeks relief herein to lift the stay for that purpose.

### Relief from Stay Is Properly Granted under These Circumstances

5.      While the purpose of an automatic stay under 11 U.S.C. §362 is to protect a Debtor's estate from creditors, if their previously commenced action will not interfere with the bankruptcy proceeding, then relief from the automatic stay is routinely granted.   See In re: Penn Dixie Industries, 6 B.R. 832 (S.D.N.Y. Br. 1980). In fact, it has been said that Congress, by enacting 11 U.S.C. §362(d) providing for relief from stay made sure that creditors were not left "in an immutable world of limbo". In re: Claughton, 140 B.R. 861 (W.D.N.C. 1992).

6.      In fact, the legislative history of the provision of relief from stay "for cause" makes it clear that "lack of adequate protection" is not the only "cause" and that **"a desire to permit an action to proceed to completion in another tribunal may provide another cause."** H.R. Rap. 95-595, 95th Cong., First Session, 343-344 (1977)[1] (emphasis supplied).

7.      In fact, it has been stated that:

> "Courts have granted relief from the automatic stay to allow unsecured creditors under the "cause" prong of §362(d) to allow matters which were on the **verge of trial** when bankruptcy was filed to proceed when no great prejudice to the bankruptcy estate would result. See e.g. Holtkamp v. Littlefield, (In re Holtkamp, 669 F.2d

---

[1] See also S. Rep. 989, 95th Cong., 2d Session, reproduced in 1978 U.S. Code Cong & Admin News 5780, 5836 in which it was stated:  "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."

505, 507-09) (7 [th] Cir. 1982)... [other supporting citations]." (emphasis supplied)

In re Bruce, 2000 Bankr. LEXIS 746 (E.D.Pa. 2000).

8.      It is clear that "any reason cognizable to the equity power and conscience of the Court as constituting the abuse of the reorganization or rehabilitation process" can be the basis of a lift stay to permit to continuation of State Court proceedings.  See In re Rabin, 53 B.R. 529 (D.N.J. 1985), citing In re Victory Construction Co., 9 B.R. 549 (C.D.Ca. 1981).

9.      In evaluating whether or not the stay ought to be lifted for the purpose of permitting the creditor to complete a pending case in State Court (in this case Federal District Court), certain standards have been developed and have been expressed in the Claughton precedent previously cited as set forth below:

> "(i)    Whether modification of the stay so as to allow litigation to conclude in a different forum will permit judicial economy;
>
> (ii)    Whether the issues in the pending litigation involve only State law so that the expertise of the Bankruptcy Court is unnecessary;
>
> (iii)   Whether relief from the stay would interfere with the Bankruptcy case; and
>
> (iv)    Whether the estate can be protected properly by a requirement that the creditor seek enforcement of any judgment through the Bankruptcy Court."

140 B.R. at 867-868.

10.     It should be clear that the existing litigation, which involves State law, meets all of the above tests. Judicial economy of a case which is fully developed through extensive discovery (more than a dozen depositions; thousands of pages of discovery provided) and ready to be tried would be promoted by a continuation of proceedings in State Court; that there is no bankruptcy expertise needed to make this fraudulent conveyance determination; and there is no interference given the lack of requested relief for collection rights in this motion.

11.     Ultimately, this Court will have to determine whether or not WOH's claim against NENS is a dischargeable debt in bankruptcy under 11 USC §523. In <u>Harris v. Fidelity & Deposit Company of Maryland</u>, 7 B.R. 284 (S.D.Fl. 1980), the Court made it quite clear that it was a proper use of the Bankruptcy Court's discretion to lift the stay to allow a fraud claim to go forward in a different non-bankruptcy forum and that, depending on how detailed the findings of fact or jury answers to special interrogatories were, such findings of fraud could be utilized by the Bankruptcy Court in making its ultimate determination as to non-dischargeability. This was clearly a case motivated by the desire to have judicial economy. That decision is equally applicable in this case as well.

12.     Given that the claim will continue against Hrustich and Pelletier outside of bankruptcy, failure to allow the case to continue against NENS in State Court risks inconsistent verdicts with respect to the fraudulent conveyance determinations.

13.     For such reasons, it is respectfully submitted that judicial economy and justice requires that the case be permitted to continue to trial in State Court.

WHEREFORE, Creditor respectfully requests an Order be made granting relief from the stay as prayed for, together with such other and further relief as to the Court may seem just and proper.

_____
Robert E. Ganz

Sworn to before me this _____
day of December, 2009.

Notary Public

JOANNE B. MARHAFER
Notary Public, State of New York
No. 01MA5079678
Qualified in Schenectady County
Commission Expires June 9, _____

**EXHIBIT 1**

PRESENT:    HON. THOMAS J. McNAMARA
Acting Justice

STATE OF NEW YORK
SUPREME COURT          COUNTY OF ALBANY

---

WHITEMAN OSTERMAN & HANNA LLP,

Plaintiff,

-against-

ALBANY-TROY NEUROSURGICAL ASSOCIATES,
P.C., NORTHEAST NEUROSURGERY, LLC,
VALMORE A. PELLETIER, M.D. and DEBORAH A.
HIRUSTICH, M.D.,

Defendants.

ALBANY-TROY NEUROSURGICAL ASSOCIATES,
P.C., NORTHEAST NEUROSURGERY, LLC,
VALMORE A. PELLETIER, M.D. and DEBORAH A.
HIRUSTICH, M.D.,

Third-Party Plaintiffs,

-against-

JOSHUA D. POWELL AND EDWARD H. SCHEID, JR.,
M.D. and JOHN F. HAMILTON, M.D.,

Third-Party Defendants.

---

**DECISION & ORDER**
Index No.: 625-06
RJI No.: 01-06-085583

Albany County Clerk
Document Number 10504072
Rcvd 09/29/2009 3:50:50 PM

(Supreme Court, Albany County, Motion Term)

APPEARANCES:        Ganz, Wokenbreit & Friedman, LLP
(By: Robert E. Ganz, Esq. And Lianne S. Pinchuk, Esq.)
*Attorneys for Plaintiff* [on the Complaint]
One Columbia Circle
Albany, New York 12203

Corrigan, McCoy & Bush
(By: Scott W. Bush, Esq.)
*Attorneys for Plaintiff* [on the Counterclaim]
22 Columbia Turnpike
Rensselaer, New York 12144

Hodgson Russ LLP
(By: Michelle L. Merola, Esq.)
*Attorneys for Defendants*
677 Broadway, Suite 301
Albany, New York 12207

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

McNamara, J.

In this action to recover legal fees, plaintiff Whiteman Osterman & Hanna, LLP (hereinafter the law firm) moves pursuant to CPLR 3212 for summary judgment, awarding it a judgment in its favor and as against defendants on the complaint and dismissing the counterclaim.  Defendants Albany-Troy Neurosurgical Associates, P.C. (hereinafter ATNSA); Northeast Neurosurgery, LLC (hereinafter NENS); Valmore A. Pelletier, M.D. (hereinafter Pelletier); and Deborah A. Hrustich, M.D. (hereinafter Hrustich) oppose the motion and cross-move pursuant to CPLR 3212 for partial summary judgment dismissing the law firm's claim for quantum meruit.  The law firm opposes the cross-motion.

ATNSA was a neurosurgery practice, of which Pelletier and Hrustich were shareholders.  In 2004, the neurosurgery practice was located near and affiliated with St. Peter's Hospital in Albany, New York.  On April 22, 2004, the law firm and ATNSA executed a letter of engagement under which the law firm was to provide certain legal services to ATNSA regarding the enforcement of certain employment contracts ATNSA had with two physicians.  That agreement provided that it would also apply to other matters undertaken by the law firm on ATNSA's behalf.  The ATNSA letter of engagement provided for the range of hourly fees that would be applied and noted: "We will send you statements for services rendered and for expenditures which we have made for you on a monthly basis.  The amounts set forth in the statements are due within thirty days after the statement is mailed.  If you have any questions about any statement, please call me promptly to discuss it" (Letter of Engagement at 2 [dated 4-22-04], Ganz Affidavit, Exhibit 4).  Pelletier executed the

2

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

ATNSA letter of engagement on behalf of ATNSA.

As part of its representation of ATNSA, between about April 2005 and September 2005, among other things, the law firm assisted (1) ATNSA in winding down its affairs; (2) the neurosurgery practice to establish a successor medical practice in a new location at the Albany Memorial Hospital campus; and (3) the neurosurgery practice to change its affiliation from St. Peter's to Albany Memorial Hospital, which included purchasing two office suites and outfitting them as medical offices. As of September 1, 2005, the practice operated under NENS, with its members consisting of Pelletier, Hrustich and third-party defendant Edward H. Scheid, Jr., M.D. (hereinafter Scheid).

Third-party defendant Joshua D. Powell (hereinafter Powell) served as the CEO of NENS. In that capacity, he executed a letter of engagement dated October 17, 2005 with the law firm for representation of NENS (NENS letter of engagement). Under that letter of engagement, the law firm was to provide certain legal services to NENS for a monthly fee of $15,000. As with the ATNSA letter of engagement, NENS was to contact the law firm if there were any disputes with the monthly statement. The NENS letter of engagement also provided that the law firm would bill NENS at an hourly rate for any services it provided not covered by the $15,000 monthly fee.

The law firm continued its representation of NENS until around December 5, 2005 when Hrustich informed the law firm that the relationship was terminated. According to the complaint, on December 16, 2005, the law firm confirmed its understanding that the termination of its services to the practice was without cause. Also that month, Powell and Scheid both resigned.

3

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

After ATNSA and NENS failed to pay the outstanding balances purportedly due the law firm,

on January 30, 2006, the law firm commenced this action to recover those fees.  Defendants then

joined issue, raising various affirmative defenses; interposing counterclaims sounding, inter alia, in

legal malpractice; and commenced a third-party action against, among others, Scheid and Powell.

Following extensive discovery and the filing of a notice of issue, the law firm now moves pursuant

to CPLR 3212 for summary judgment awarding a judgment of $144,450.37 plus interest in its favor

and dismissing the affirmative defenses and counterclaims.  Defendants oppose the motion and

cross-move pursuant to CPLR 3212 for partial summary judgment dismissing the quantum meruit

claim.

To obtain summary judgment, a movant must make a prima facie showing of entitlement to

judgment as a matter of law, tendering sufficient evidence to eliminate any genuine material issues

of fact from the case (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324, 508 NYS2d 923 [1986]).

The failure to make such a showing, however, mandates denial of the motion, regardless of the

sufficiency of the opposing papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853,

487 NYS2d 316 [1985]).  If the prima facie showing is made, the burden shifts to the party opposing

the motion for summary judgment to come forward with evidentiary proof in admissible form to

establish the existence of material issues of fact which require a trial (*see Zuckerman v City of New

York*, 49 NY2d 557, 562, 427 NYS2d 595 [1980]).

Here, the law firm has established its prima facie entitlement to judgment as a matter of law

with regard to the its breach of contract claims as against ATNSA and NENS (the first and fourth

causes of action, respectively) by submitting the letters of engagement, the billing records detailing

4

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

the legal services provided, and the balance due by each entity (*see Hussey v Joseph N. Leggio Agency, Inc.*, 299 AD2d 690, 691 [2002]; *see also Kool-Temp Heating & Cooling, Inc. v Ruzika*, 6 AD3d 869, 869-870 [2004]). Similarly, the law firm has also shown its prima facie entitlement to judgment as a matter of law with regard to an account stated as against ATNSA and NENS (the second and fifth causes of action, respectively) (*see Ruskin, Moscou, Evans & Faltischek. P.C. v FGH Realty Credit Corp.*, 228 AD2d 294, 295-296 [1996]). "'An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due'" (*J.B.H., Inc. v Godinez*, 34 AD3d 873, 874 [2006], quoting *Jim-Mar Corp. v Acquatic Constr., Ltd.*, 195 AD2d 868, 869 [1993], *lv denied* 82 NY2d 660 [1993]).

Besides proffering, inter alia, the billing records for the ATNSA and NENS accounts, the law firm has submitted excerpts of examination before trial testimony of Pelletier and Powell in which each avers that neither ATNSA nor NENS ever disputed the billing (*see id.* at 875). Furthermore, the law firm submits the affidavit of Joel Hodes, Esq., the law firm's lead attorney representing ATNSA and NENS, noting that "no written objection to any fee charged to ATNSA was ever made; only in the fall of 2005 did Dr. Hrustich assert, orally, in a general way, that she felt fees were too high" (Hodes Affidavit [sworn to 3-20-09] at ¶ 25). As to this oral objection, such an oral protest "fall[s] far short of raising a question of fact as to the existence of an account stated" (*J.B. H., Inc.*, 34 AD3d at 875, citing *Darby & Darby, P.C. v VSI Intl.*, 95 NY2d 308, 315 [2000]). In opposition, defendants contend that billing statements were vague. This claim, however, is belied in part by the record which shows that the statements were sufficiently detailed by noting the services performed,

5

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

the date they were performed and by whom they were performed (*cf Scheichet & Davis, P.C. v Steinger*, 183 AD2d 479,479 [1992]). Moreover, as the record demonstrates, defendants raised no timely objections to the statements; thus, their "'silence is deemed acquiescence'" (*J.B.H., Inc.*, 34 AD3d at 875 [quoted cases omitted]).

Otherwise, defendants argue that summary judgment on either the law firm's breach of contract or account stated claims is improper since questions of fact exist to whether the law firm committed malpractice in its representation of ATNSA and NENS. The law firm disagrees, arguing that no questions of fact exist and it should be granted summary judgment dismissing the counterclaims sounding in legal malpractice as well as any affirmative defenses.

"To establish a claim for legal malpractice, it [is] necessary for defendants to establish the existence of an attorney-client relationship at the time of the alleged malpractice and that 'the attorney was negligent, that the negligence was a proximate cause of the loss sustained, and that plaintiff suffered actual and ascertainable damages'" (*Tabner v Drake*, 9 AD3d 606, 609 [2004], quoting *Ehlinger v Ruberti, Girvin & Ferlazzo*, 304 AD2d 925, 926 [2003]). Thus, a party claiming legal malpractice must "establish that counsel 'failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession' and to meet the exacting standard that 'but for the attorney's negligence' the outcome of the matter would have been substantially different'" (*Kaminksy v Herrick, Feinstein, LLP*, 59 AD3d 1, 9 [2008], *lv denied* 2009 NY Slip Op 76222 [June 25, 2009], quoting *AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428, 434 [2007]). In seeking summary judgment dismissing the counterclaims and any affirmative defenses based on legal malpractice, it is the law firm's "burden to establish that defendants are

6

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

unable to prove at lease one of these elements" (*Tabner*, 9 AD3d at 609).

Here, as a threshold matter, defendants claim that the law firm violated 22 NYCRR 1200.9

by representing Powell and Scheid in other ventures after it completed its representation of them.

Since this claim is neither alleged in the counterclaims nor noted in the bill of particulars, defendants

cannot now assert it in this motion practice (*see Matthew v Mishra*, 41 AD3d 1230, 1231 [2007];

*see also Guiles v Simse,*, 35 AD3d 1054, 1056 [2006]). Otherwise, defendants' claims of legal

malpractice as presented in this motion practice, inter alia, include allegations that the law firm

advanced the concerns of Powell and Scheid over that of the corporate clients in violation of 22

NYCRR 1200.13.[1]  In particular, defendants contend that (1) correspondence between Hodes and

Scheid's counsel assures Scheid that certain provisions will be included in the final operating

agreement that defendants contend are favorable to Scheid; (2) Hodes ensured that NENS executed

a favorable employment contract with Powell, giving Powell authority to approve a fee agreement

favorable to the law firm; and (3) Hodes advised Powell and Scheid regarding their resignations.

Here, the law firm has demonstrated its prima facie entitlement to judgment as a matter of

law dismissing the claims of legal malpractice (*see e.g. Alvarez.*, 68 NY2d at 324). First, with

respect to the operating agreement, in his affidavit, Hodes avers:

I exerted my best professional efforts on behalf of the entity as a whole to find a way

---

[1]  22 NYCRR 1200.13 (a) provides:

When a lawyer employed or retained by an organization is dealing with the organization's
directors, officers, employees, members, shareholders or other constituents, and it appears that the
organization's interests may differ from those of the constituents with whom the lawyer is dealing,
the lawyer shall explain that the lawyer is the lawyer for the organization and not for any of the
constituents.

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
Index No.: 625-06; RJI: 01-06-085583

> to meet the widely divergent needs and desires of the different doctors with the
> NENS practice so that a mutually acceptable operating agreement could be executed.
> I failed in that effort but never sought to gain advantage for any party and assumed,
> once each of the doctors obtained independent counsel, that their individual interests
> would be advocated by such counsel (Hodes Affidavit at ¶ 34).

The record shows that the individual members of NENS were represented by their own counsel.

Further, besides the denial by Hodes that he acted in any way to create a conflict in a situation where

the individual members' interests were being represented by independent counsel, case law holds

that, generally, "a violation of a disciplinary rule does not in and of itself amount to actionable

negligence on the part of an attorney [unless] . . . the client can show that he or she suffered actual

damages as a result of the conflict" (*Tabner*, 9 AD3d at 610). Here, nothing in the record shows that

defendants suffered any actual damages as a result of the alleged conflict (*see Guiles*, 35 AD3d at

1056). Furthermore, defendants have failed to raise a triable issue of fact with regard to his

allegation of legal malpractice. Defendants have not submitted an affidavit from an individual with

personal knowledge refuting the prima facie showing (*see Antokol & Coffin v Myers*, 30 AD3d 843,

846 [2006]). In addition, defendants have not submitted competent evidence to establish the

standard of professional care and skill that the law firm allegedly failed to meet (*see Thaler & Thaler

v Gupta*, 208 AD2d 1130, 1132 [1994]).

Similarly, with respect to defendants' claim that due to the Powell employment agreement

with NENS the law firm benefitted by receiving an inflated monthly legal fee, the law firm has

submitted admissible evidence in the form of Hodes's affidavit to refute this claim. Hodes avers that

the $15,000 monthly fee was arrived at by calculating the average costs of legal services it had been

8

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

providing to the medical practice. Further, he showed that at times the medical practice received

legal services valued at a much higher price than covered under the flat fee arrangement. Defendants

have only offered speculation that the fee was too high, failing to rebut the defendant's prima facie

showing. Finally, as to the resignations, even if Hodes had advanced warning that these were to

happen, nothing in the record or in defendants' submissions of emails shows that Hodes assisted in

drafting the resignation letters. Defendants' contrary claims are merely speculative.

Defendants also claim that the law firm failed to adequately represent NENS in creating that

corporate entity since nothing in the corporate papers address the assumption of ATNSA's debts,

placing NENS, Pelletier and Hrustich at risk. The law firm explains that the operating agreement,

signed for purposes of closing on the new office space in July 2005, was placed in escrow until a

final agreement could be negotiated taking into account the varied and opposing interests of the three

member physicians. Again, these physicians were represented by independent counsel who certainly

should have been looking out for the individual interest of Hrustich and Pelletier. Moreover, the

records show that NENS was formed so that Scheid, not a member of ATNSA, would not assume

any liability from ATNSA. Defendants have not submitted an affidavit from an individual with

personal knowledge refuting the prima facie showing (*see Antokol & Coffin*, 30 AD3d at 846). In

addition, defendants have not submitted competent evidence to establish the standard of professional

care and skill that the law firm allegedly failed to meet (*see Thaler & Thaler*, 208 AD2d at 1132).

Finally, defendants contend that the law firm failed to properly draft the employment

agreement between ATNSA and third-party defendant John F. Hamilton, M.D., since it lacked an

9

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

effective restrictive covenant. The law firm has submitted deposition testimony from Pelletier in which he testified that the practice did not as a general rule enforce restrictive covenants in its agreements with physicians. With this unrefuted concession, defendants' claim that such drafting was a proximate cause of any alleged damage they suffered appears unavailing (*see Antokol & Coffin*, 30 AD3d at 845).[2]  In response, defendants have not submitted competent evidence to establish the standard of professional care and skill that the law firm allegedly failed to meet in drafting this provision (*see Merlin Biomed Asset Mgt., LLC v Wolf Block Schorr & Solis-Cohen, LLP*, 23 AD3d 243, 243 [2005]; *Thaler & Thaler*, 208 AD2d at 1132).

Thus, given the showing by the law firm and the failure by defendants to rebut the showing, the branch of the motion to dismiss the counterclaim for legal malpractice is granted (*see e.g. Mega Group, Inc. v Pechenick & Curro, P.C.* 32 AD3d 584, 587 [2006]). Also, since the legal malpractice claims cannot serve to raise issues of fact to either the breach of contract claim or the account stated, the Court grants those branches of the law firm's motion for summary judgment on those claims (*see Thaler & Thaler*, 208 AD2d at 1132; *cf Couch White, LLP v Kelly*, 286 AD2d 526, 528 [2001]). Further, the Court grants that branch of the law firm's motion for summary judgment dismissing the remaining counterclaims for breach of contract, breach of fiduciary duty, and unjust enrichment since they are duplicative of the claims discussed and dismissed above (*see Kvetnaya v Tylo*, 49 AD3d 608, 608 [2008]; *Town of Wallkill v Rosenstein*, 40 AD3d 972, 974 [2007]). In addition, the counterclaim for an accounting is also dismissed, especially in light of the Court's finding that the

---

[2]  Also of note, at the time Hamilton left the neurosurgery practice, he was employed with NENS and had no employment agreement with that entity.

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

billing statements adequately informed defendants of the legal services rendered (*see Sitar v Sitar*, 50 AD3d 667, 670 [2008]) and, otherwise, the law firm demonstrated that defendants had no right to this equitable remedy (*cf Kastle v Steibel*, 120 AD2d 868, 869-870 [1986]).

Next the Court considers the branch of the law firm's motion for summary judgment on its claims of constructive and actual fraudulent conveyance (the seventh through tenth causes of action). Essentially, the law firm alleges that ATNSA's funds were improperly transferred to Hrustich and Pelletier and NENS without fair consideration, leaving ATNSA an empty shell without means to pay its debts – including legal fees owed the law firm. Thus, the law firm argues that NENS, Hrustich and Pelletier are liable for ATNSA's debt to the law firm by (1) applying the theory of fraudulent conveyance (Debtor and Creditor Law § 274), (2) piercing the corporate veil, or (3) the doctrine of successor liability through a de facto merger.

As to the alleged fraudulent conveyances, Debtor and Creditor Law § 274 provides:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

Here, whether the law firm has made a prima facie case regarding a fraudulent conveyance is questionable. For instance, the law firm submits various pages from examination before trial testimony that certain office furnishings where taken over by NENS without the payment of any consideration and that no consideration was paid for the goodwill of the ATNSA practice. However, it is difficult to determine from this testimony the value of these assets compared with the total assets

11

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

transferred to NENS. Although there was some testimony that Pelletier and Hrustich were paid from

ATNSA after it ceased to exist, the Court cannot determine on this record whether those payments

were for work done for NENS or ATNSA. In any event, defendants have submitted an affidavit of

Jeffrey Grossman, a partner of Grossman and Grossman, which rebuts any prima facie showing. For

example, Grossman avers:

> Paragraph 72 of Mr. Ganz' affidavit cites my testimony as support for his assertion
> that the physicians intentionally and improperly used ATNSA funds for their
> personal benefit and for the benefit of NENS. I believe that Mr. Ganz misunderstood
> my testimony. The only ATNSA funds used for the personal benefit of the
> physicians is money that was owed to them by ATNSA for services rendered to
> ATNSA. I am not aware of any ATNSA funds that were used for the benefit of
> NENS (Grossman Affidavit [sworn to 4-24-09] at ¶ 11).

Grossman also notes that NENS paid ATNSA a total of $242,078.54 for the transferred assets,

which originally cost $534,800. He also explains how this value was reached. Therefore, given this

evidence raising material issues of fact, summary judgment on these causes of action is not

warranted (*see Rebh v Rotterdam Ventures, Inc.*, 252 AD2d 609, 611 [1998]; *Matter of American*

*Investment Bank, N.A. v Marine Midland Bank, N.A.*, 191 AD2d 690, 690 [1993]; *see also Pen Pak*

*Corp. v LaSalle National Bank of Chicago*, 240 AD2d 384, 385 [1997]). Similarly, questions of fact

exist whether the corporate veil should be pierced since the submissions presented by the law firm

do not establish that defendants exercised total domination over ATNSA in the transfer of assets to

NENS that they perpetrated a fraud or wrong against the law firm (*cf Matter of EAC of NY, Inc. v*

*Capri 400, Inc.*, 49 AD3d 1006, 1007 [2008]).

As to the application of the de facto merger doctrine, "[t]he purchaser of a corporation's

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
<u>*Index No.: 625-06; RJI: 01-06-085583*</u>

assets ordinarily does not, as result of the purchase, become liable for the debts of its predecessor;" except where "(1) the buyer expressly or impliedly assume the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations" (*Matter of AT&S Transp., LLC v Odyssey Logistics & Tech. Corp.*, 22 AD3d 750, 752 [2d Dept 2005]). Here, questions exist regarding the application of this doctrine to preclude summary judgment in the law firm's favor. While the law firm argues that the ledger statements and certain examination before trial testimony indicate that NENS was a continuation of ATNSA and there was a "co-mingling" of those entities assets, defendants have raised issues of fact regarding whether such "co-mingling" occurred (*cf id.*).

Finally, defendants' cross motion for partial summary judgment dismissing the quantum meruit claim in the complaint is dismissed as academic since the Court has granted the law firm summary judgment on its other claims seeking the same relief. Otherwise, the Court has considered the parties' remaining arguments and finds them either unavailing or unnecessary to reach given this Court's determination. Accordingly, it is

**ORDERED** that the plaintiff's motion for summary judgment is granted to the extent discussed in the Court's decision; and it is further

**ORDERED** that the counterclaims are dismissed; and it is further

**ORDERED** that the defendants' motion for partial summary judgment is dismissed as academic.

13

*Whiteman Osterman & Hanna LLP v Albany-Troy Neurosurgical Assocs., et al.*
*Index No.: 625-06; RJI: 01-06-085583*

      This constitutes the decision and order of the Court. The original decision and order are returned to the attorneys for Plaintiff [on the complaint].  A copy of the decision and order and the supporting papers have been delivered to the County Clerk for placement in the file.  The signing of this decision and order, and delivery of a copy of the decision and order shall not constitute entry or filing under CPLR 2220.  Counsel is not relieved from the applicable provisions of that rule respecting filing, entry and notice of entry.

SO ORDERED.

ENTER.

Dated: Saratoga Springs, New York
       September 23, 2009

                               Thomas J. McNamara
                               Acting Supreme Court Justice

Papers Considered:

1.  Notice of Motion dated March 20, 2009;
2.  Affidavit of Robert E. Ganz, Esq., sworn to March 20, 2009, with accompanying Exhibits 1-18;
3.  Affidavit of Joel Hodes, Esq., sworn to March 20, 2009;
4.  Plaintiff's Memorandum of Law;
5.  Notice of Cross-Motion dated April 24, 2009;
6.  Affidavit of Michelle L. Merola, Esq., sworn to April 24, 2009, with accompanying Exhibits 1-41;
7.  Affidavit of Jeffrey Grossman sworn to April 24, 2009, with accompanying Exhibits 1-2;
8.  Defendants' Memorandum of Law dated April 24, 2009;
9.  Reply Affidavit of Robert E. Ganz, Esq., sworn to May 7, 2009, with accompanying Exhibits 18-27;
10. Plaintiff's Reply Brief ;
11. Affidavit of Deborah Hrustich sworn to May 8, 2009;
12. Defendants' Reply Memorandum of Law dated May 8, 2009.

14

**EXHIBIT 2**

STATE OF NEW YORK
SUPREME COURT                    COUNTY OF ALBANY

---

WHITEMAN OSTERMAN & HANNA, LLP.,

                              Plaintiff,                    Index No.625-06

       v.                                            RJI No.01-06-085583

ALBANY-TROY NEUROSURGICAL ASSOCIATES,
P.C., NORTHEAST NEUROSURGERY, LLC
VALMORE A. PELLETIER, M.D. and
DEBORAH A. HRUSTICH                                    **Albany County Clerk**
                             Defendants.        Document Number 10505211
                                       Rcvd 10/01/2009 12:05:18 PM



---

### JUDGMENT

Plaintiff, Whiteman, Osterman & Hanna, LLP having moved for Summary Judgment against the Defendants for legal fees and to dismiss counterclaims, and

The Court, having granted Plaintiff's Motion for Summary Judgment by Decision & Order dated September 23, 2009 and entered in the Albany County Clerk's Office on September 30, 2009 to the extent indicated below, a copy of said Decision & Order which is attached hereto, it is hereby

ORDERED, ADJUDGED AND DECREED that Whiteman, Osterman & Hanna, LLP, One Commerce Plaza, Albany, NY 12206 have judgment against Defendant **Albany-Troy Neurosurgical Associates P.C.**, c/o Northeast Neurosurgery, LLC, in the principal amount of One Hundred Fifteen Thousand Six Hundred Eighty-eight and 81/100 Dollars ($115,688.81), plus pre-judgment interest at the contract rate of twelve percent (12%) per annum from July 1,2005 through September 30, 2009 in the sum of Fifty Nine Thousand Twenty-Nine and 82/100 Dollars ($59,029.82), for a total sum of One Hundred Seventy Four Thousand Seven Hundred Eighteen

and 63/100 dollars (**$174,718.63**),  and Plaintiff Whiteman Osterman & Hanna, LLP shall

execution; and it is further

ORDERED ADJUDGED AND DECREED  that Whiteman, Osterman & Hanna, LLP

One Commerce Plaza, Albany, NY 12206 have judgment against  **Northeast Neurosurgery,**

**LLC**, 63 Shaker Road, Albany NY  12204 in the principal amount of Twenty-Eight Thousand

Seven Hundred Sixty One  and 56/100 Dollars ($28,761.56), plus pre-judgment interest at the

contract rate of twelve percent (12%) per annum from December  1,2005 through September 30,

2009 in the sum of Thirteen Thousand Two Hundred Twenty Eight and 74/100 ($13,228.74) plus

statutory costs and fees of Eleven Hundred Sixty Nine Dollars ($1,169.00), as set forth on the

attached bill of costs, for a total judgment of Forty Three Thousand One Hundred Fifty Nine and

30/100 Dollars ( **$43,159.30**) and Whiteman Osterman & Hanna, LLP. shall have execution

thereupon; and it further,

ORDERED, ADJUDGED AND DECREED, that Plaintiff Whiteman Osterman & Hanna,

LLP, One Commerce Plaza, Albany, NY 12260 have Judgment against  the Defendants Albany-

Troy Neurosurgical Associates P.C., Northeast Neurosurgery, LLC,  Valmore A. Pelletier, and

Deborah A. Hrustich, MD all of 63 Shaker Rd, Albany NY 12204 dismissing all counterclaims

on the merits with prejudice.

DATED: October  /  , 2009

S/ _(signature)_

Albany County Clerk

STATE OF NEW YORK
SUPREME COURT                              COUNTY OF ALBANY

_____

WHITEMAN OSTERMAN & HANNA LLP          *Geat Tapes @  1169*

                Plaintiff                        *Hannah Ch*      10-1-09
    v.                                                              mB

ALBANY-TROY NEUROSURGICAL ASSOCIATES,      **BILL OF COSTS**
P.C., NORTHEAST NEUROSURGERY, LLC,         Index No. 625-06
VALMORE A. PELLETIER, M.D. AND DEBORAH A.
HRUSTICH, M.D.,
                Defendants

_____

| | |
|---|---:|
| Statutory Costs | $400.00 |
| Service of Process | 150.00 |
| Index No. | 210.00 |
| Motion Fee | 45.00 |
| Note of Issue | 30.00 |
| Sheriffs Fees on Execution and Mileage | 30.00 |
| Postage (Estimated) | 54.00 |
| Deposition Fee | <u>250.00</u> |
| **TOTAL** | **$1,169.00** |

        The undersigned, an attorney admitted to practice in the courts of this state, affirms:
that he is the attorney(s) of record for the Plaintiff in the above-entitled action; that the
foregoing disbursements have been or will necessarily be made or incurred in this action and are
reasonable in amount, and that copies of documents or papers as charged herein were actually and
necessarily obtained for use.

        The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated: September 29, 2009          _____
                                            Robert E. Ganz